**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

ELSA M. RODRIGUEZ,                          )      CASE NO. 1:20-CV-02326-CEH
                                            )
            Plaintiff,                      )      CARMEN E. HENDERSON
                                            )      UNITED STATES MAGISTRATE JUDGE
       v.                                   )
                                            )      MEMORANDUM OF OPINION & ORDER
                                            )
COMMISSIONER OF SOCIAL SECURITY,            )
                                            )
            Defendant,                      )
                                            )

## I. Introduction

Plaintiff, Elsa M. Rodriguez ("Rodriguez" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 21). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On October 30, 2018, Claimant filed an application for DIB, alleging a disability onset date of July 1, 2012 and claiming she was disabled due to carpal tunnel in both hands, left elbow pain, left shoulder injury, depression, anxiety, and type II diabetes. The application was denied initially and upon reconsideration, and Rodriguez requested a hearing before an administrative law judge ("ALJ"). On September 12, 2019, an ALJ held a hearing, during which Rodriguez, represented by counsel, and an impartial vocational expert testified.  (ECF No. 10, PageID #: 99-132).  On October 7, 2019, the ALJ issued a written decision finding Claimant was not disabled.

1

(ECF No. 10, PageID #: 82-98).  The ALJ's decision became final on August 19, 2020, when the

Appeals Council declined further review.  (ECF No. 10, PageID #: 71-76).

On October 13, 2020, Claimant filed her Complaint to challenge the Commissioner's

final decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos.14, 17,

19). Claimant asserts the following assignments of error:

1. The ALJ's Step Two mental findings are unsupported by substantial evidence, which impacted the remainder of the decision and Plaintiff's RFC.

2. The ALJ's physical RFC determination is unsupported by any medical opinion.

(ECF No. 14 at 3).

## III. Background[1]

### A. Relevant Hearing Testimony

Claimant testified that she previously treated with a psychologist. (ECF No. 10, PageID #: 120). She stated that her mental state is getting worse and she wants to find another psychologist. (ECF No. 10, PageID #: 120). Claimant testified that she is on medication for her mental health and that it makes her feel "like [a] zombie." (ECF No. 10, PageID #: 123). Finally, she testified that she suffers from crying spells. (ECF No. 10, PageID #: 124).

### B. Relevant Medical Evidence

On April 21, 2017, Claimant treated with Leonor Osorio, D.O., due to anxiety and depression due to the recent death of her husband. (ECF No. 10, PageID #: 380). Dr. Osorio diagnosed depression and anxiety, and prescribed Lexapro. (ECF No. 10, PageID #: 380-381).

---

[1] Because this Memorandum of Opinion resolves this matter based on Claimant's first issue related to her mental health impairments, only the facts related to her mental health treatment are included here.

Dr. Osorio referred Claimant to psychology for further consultation. (ECF No. 10, PageID #: 381). Records from a visit with Dr. Osorio on May 9, 2018, show that Claimant continued to use Lexapro to treat her depression, but that she had concerns about the status of her depression. (ECF No. 10, PageID #: 357). Dr. Osorio continued her treatment with Lexapro. (ECF No. 10, PageID #: 357).

Medical evidence after June 30, 2018, Claimant's date last insured, also includes treatment for depression and anxiety. On August 30, 2018, Claimant treated with Dr. Osorio due to her depression. (ECF No. 10, PageID #: 334-335).  Dr. Osorio diagnosed Claimant with obesity, depression, and hyperlipidemia. (ECF No. 10, PageID #: 335). Dr. Osorio recommended Claimant consult with a psychiatry specialist. (ECF No. 10, PageID #: 335).

On September 28, 2018, Claimant presented to the emergency room because of her increased depression. (ECF No. 10, PageID #: 327, 328).  Staff notes state that "Patient presents to ED with increasing depression since her husband died 2 years ago. [Patient] states she has been having more problems with one of her daughters and it has become overwhelming and causing her to feel very depressed. Patient denies [suicidal and homicidal ideations] and [audio/visual hallucinations] at this time. [Patient] states she does not want to hurt anyone but does not to go home, states she has not slept in two days. At this time, patient is very tearful and reluctant to discuss further with RN." (ECF No. 10, PageID #: 327). The nurse noted that Claimant was nervous/anxious, had a flat affect, had poor eye contact, and admitted to passive death-wishing thoughts (ECF No. 10, PageID #: 329, 330, 331).

On November 16, 2018, Claimant treated with Yaritza Colon, LISW-S, due to increased depressing mood, anxiety, and symptoms of grief. (ECF No. 10, PageID #: 475-476). Claimant reported she was still not over the death of her husband and felt overwhelmed by her symptoms.

3

(ECF No. 10, PageID #: 476). She did not feel that her symptoms were well managed. (ECF No. 10, PageID #: 476). She reported being tearful, having low mood, decreased interest, low energy, increased apathy, feeling lonely, and having increased appetite. (ECF No. 10, PageID #: 476). She indicated that she preferred to stay in bed all day. (ECF No. 10, PageID #: 476). She stated that her sleep was poor, and she felt tired daily. (ECF No. 10, PageID #: 476). She reported chronic worry and ruminating thoughts. (ECF No. 10, PageID #: 476). She admitted having death wishes. (ECF No. 10, PageID #: 476). Colon assessed Claimant's energy level as low. (ECF No. 10, PageID #: 476). Colon noted that Claimant's concentration fluctuated and that her memory was good. (ECF No. 10, PageID #: 476). Colon indicated that Claimant suffered from mild anxiety. (ECF No. 10, PageID #: 476). Claimant appeared engaging, tearful, and melancholic. (ECF No. 10, PageID #: 477). Her mood was sad. (ECF No. 10, PageID #: 477). Colon reported that Claimant scored 25 on the PHQ-9 and 13 on the GAD-7, both indicative of moderate to severe symptoms of depression and anxiety. (ECF No. 10, PageID #: 477).

On December 13, 2018, Claimant treated with Dr. Osorio. (ECF No. 10, PageID #: 134). Plaintiff admitted that her depression had improved but was still present and that she had an appointment with a psychiatrist the following week. (ECF No. 10, PageID #: 133). Dr. Osorio prescribed her Buspirone and Lexapro for anxiety and depression. (ECF No. 10, PageID #: 134-135).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. Through the date last insured, the claimant had the following severe impairments: left elbow epicondylitis; lumbar radiculopathy; carpal tunnel syndrome status-post right carpal tunnel release surgery; and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch and crawl; frequently handle and finger bilaterally.

6. Through the date last insured, the claimant was capable of performing past relevant work as a Small Product Assembler. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2012, the alleged onset date, through June 30, 2018, the date last insured (20 CFR 404.1520(f)).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007)

(citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal. First, Claimant asserts that the ALJ erred in the Step Two analysis by finding that her mental health impairments were not a severe impairment.

Second, Claimant asserts that the ALJ's physical RFC determination was not supported by substantial evidence since it is lacks support from any medical opinion. Because this Court finds that remand is necessary on Claimant's first issue, it expresses no opinion as to the second issue.

The Claimant argues that the ALJ erred by finding that her anxiety and depression are not "severe", and that substantial evidence does not support the RFC because it does not consider Claimant's mental limitations. The Commissioner argues that "[h]aving failed to bring forth contrary evidence from the relevant period, Plaintiff has failed to meet her burden. Simply put, despite claiming to be disabled, for the entirety of the relevant period, it appears that Plaintiff never saw a psychiatrist or psychologist. No mental status examination during the relevant period ever documented difficulties with basic work activities. See 20 C.F.R. § 404.1522. Thus, Plaintiff never met her burden at step two." (ECF No. 17 at 14).

As noted, the ALJ found that Claimant's anxiety and depression are not severe impairments. (*See* ECF No. 10, PageID #: 87). The Court will not disturb that finding here. "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*quoting Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). However, the failure to find an impairment severe is harmless error where other impairments are deemed severe. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)

Here, the ALJ found that Claimant suffered numerous severe impairments: "left elbow epicondylitis; lumbar radiculopathy; carpal tunnel syndrome status-post right carpal tunnel

release surgery; and obesity[.]" (ECF No. 10, PageID #: 87). Therefore, Claimant "cleared step two of the analysis." *Anthony*, 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (*citing Maziarz*, 837 F.2d at 244). However, as discussed below, the decision does not indicate that the ALJ considered Claimant's anxiety or depression in the remainder of the decision when determining the RFC; thus, remand is required.

"When formulating an RFC, an ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (*citing LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe."); SSR 96-8p, 61 Fed. Reg. at 34477("In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'")). The ALJ must do so because:

> [w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "'an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions.'" *Kochenour*, 2015 WL 9258609, at *6 (*quoting Patterson*, 2015 WL 5560121, at *4).

In this case, the ALJ found Claimant had severe physical impairments but no severe mental impairments. The ALJ concluded Claimant's mental impairments were non-severe after determining that she has no limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace, and no more than mild limitations adapting or managing herself. (ECF No. 10, PageID #: 89). If the Commissioner rates the degree of limitation as none or mild, then the Commissioner will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d). That the ALJ found Claimant had at most mild limitations in regards to the functional areas does not mandate inclusion of limitations in the RFC. *See, e.g., Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (finding no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *5 (S.D. Ohio Aug. 21, 2017) (finding that mild mental impairment does not require inclusion of mental limitations in RFC); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations). Although an ALJ is not obligated to discuss every piece of information in the

9

record, she must "consider[ ] all of a claimant's medically determinable impairments" and support the opinion with substantial evidence. *Lee v. Berryhill*, Case No. 1:17-cv-1865, 2018 WL 3970553, at *3 (N.D. Ohio Aug. 20, 2018); *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 450 (6th Cir. 2017).

In reaching her Step Two determination, the ALJ summarized Claimant's treatment for her mental impairments as follows:

> sought treatment for anxiety and depression in April 2017 after the death of her husband (B1F/63). She complained of problems with grief and overeating (B1F/63). Evidence from August of that year indicates that the claimant was taking Lexapro to help manage her symptoms (B1F/58). Almost a year later, the claimant was referred to a psychiatrist for additional treatment and prescribed Buspirone, in with the medical experts' opinions.

(ECF No. 10, PageID #: 88). Thereafter, the ALJ indicated her understanding that the Step Two finding is not the final step in which she must consider Claimant's mental impairments:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(ECF No. 10, PageID #: 89-90). Despite this recognition, the ALJ failed to analyze Claimant's mental impairment at any point after the Step Two analysis.

At the hearing, Claimant testified that she previously treated with a psychologist. (ECF No. 10, PageID #: 120). She stated that her mental state is getting worse and she wants to find another psychologist. (ECF No. 10, PageID #: 120). Claimant testified that she is on medication

for her mental health and that it makes her feel "like [a] zombie." (ECF No. 10, PageID #: 123). Finally, she testified that she suffers from crying spells. (ECF No. 10, PageID #: 124).

Claimant's medical records indicate she treated for her anxiety and depression during the insured period. On April 21, 2017, Claimant treated with Leonor Osorio, D.O., due to anxiety and depression related to the recent death of her husband. (ECF No. 10, PageID #: 380). Dr. Osorio diagnosed depression and anxiety, and prescribed Lexapro. (ECF No. 10, PageID #: 380-381). Dr. Osorio referred Claimant to psychology for further consultation. (ECF No. 10, PageID #: 381). Records from a visit with Dr. Osorio on May 9, 2018, show that Claimant continued to use Lexapro to treat her depression, but that she had concerns about the status of her depression. (ECF No. 10, PageID #: 357). Dr. Osorio continued her treatment with Lexapro. (ECF No. 10, PageID #: 357).

Medical evidence after June 30, 2018, Claimant's date last insured, also includes treatment for depression and anxiety. On August 30, 2018, Claimant treated with Dr. Osorio due to her depression. (ECF No. 10, PageID #: 334-335). Dr. Osorio diagnosed Claimant with obesity, depression, and hyperlipidemia. (ECF No. 10, PageID #: 335). Dr. Osorio recommended Claimant consult with a psychiatric specialist. (ECF No. 10, PageID #: 335).

On September 28, 2018, Claimant presented to the emergency room because of her increased depression. (ECF No. 10, PageID #: 327, 328). Staff notes state that "[p]atient presents to ED with increasing depression since her husband died 2 years ago. [Patient] states she has been having more problems with one of her daughters and it has become overwhelming and causing her to feel very depressed. Patient denies [suicidal and homicidal ideations] and [audio/visual hallucinations] at this time. [Patient] states she does not want to hurt anyone but does not to go home, states she has not slept in two days. At this time, patient is very tearful and

reluctant to discuss further with RN." (ECF No. 10, PageID #: 327). The nurse noted that Claimant was nervous/anxious, had a flat affect, had poor eye contact, and admitted to passive death-wishing thoughts. (ECF No. 10, PageID #: 329, 330, 331).

On November 16, 2018, Claimant treated with Yaritza Colon, LISW-S, due to increased depressing mood, anxiety, and symptoms of grief. (ECF No. 10, PageID #: 475-476). Claimant reported she was still not over the death of her husband and felt overwhelmed by her symptoms. (ECF No. 10, PageID #: 476). She did not feel that her symptoms were well managed. (ECF No. 10, PageID #: 476). She reported being tearful, having low mood, decreased interest, low energy, increased apathy, feeling lonely, and having increased appetite. (ECF No. 10, PageID #: 476). She indicated that she preferred to stay in bed all day. (ECF No. 10, PageID #: 476). She stated that her sleep was poor, and she felt tired daily. (ECF No. 10, PageID #: 476). She reported chronic worry and ruminating thoughts. (ECF No. 10, PageID #: 476). She admitted having death wishes. (ECF No. 10, PageID #: 476). Colon assessed Claimant's energy level as low. (ECF No. 10, PageID #: 476). Colon noted that Claimant's concentration fluctuated and that her memory was good. (ECF No. 10, PageID #: 476). Colon found that Claimant suffered from depressive disorder and anxiety. (ECF No. 10, PageID #: 477). Claimant appeared engaging, tearful, and melancholic. (ECF No. 10, PageID #: 477). Her mood was sad. (ECF No. 10, PageID #: 477). Colon reported that Claimant scored 25 on the PHQ-9 and 13 on the GAD-7, both indicative of moderate to severe symptoms of depression and anxiety. (ECF No. 10, PageID #: 477).

On December 13, 2018, Claimant treated with Dr. Osorio. (ECF No. 10, PageID #: 134). Claimant admitted that her depression had improved but was still present and that she had an appointment with a psychiatrist the following week. (ECF No. 10, PageID #: 133). Dr. Osorio

12

prescribed her Buspirone and Lexapro for anxiety and depression. (ECF No. 10, PageID #: 134-135).

Even though this evidence followed Claimant's date of last insured, Claimant's depression and anxiety were present before the end of June 2018 and the later evidence was reasonably close in time to her insured period – from August 2018 to December 2018. Therefore, the records were relevant in determining Claimant's RFC and should have been considered by the ALJ.[2] The only part of the ALJ's RFC analysis, however, that mentions Claimant's anxiety and depression is through the ALJ's statement that "the medical evidence available at the hearing level was sufficient to determine that the claimant's mental impairments are non-severe, as detailed above (B1F; B2F)." (ECF No. 10, PageID #: 27).

---

[2] In order to establish eligibility for disability benefits a claimant must establish that she became disabled prior to the expiration of her insured status. *Carter v. Comm'r of Soc. Sec. Admin.*, No. 5:12CV2321, 2013 WL 3940874, at *6 (N.D. Ohio July 30, 2013) (citing 42 U.S.C. § 423(c) (1); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs*, 880 F.2d at 862). "'[A]s a general rule, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.'" *Id.* (quoting *Forshee v. Comm'r of Soc. Sec.*, 2012 WL 1672974 at * 8 (E.D. Mich. April 11, 2012)). However, the Sixth Circuit has found that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time." *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976). "Federal courts have therefore held that 'medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status.'" *Carter*, 2013 WL 3940874 at *6 (quoting *Anderson v. Comm'r of Soc. Sec.*, 440 F.Supp.2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); and *Begley*, 544 F.2d at 1354). *See also Forshee*, 2012 WL 1672974 at * 8*; O'Bert v. Comm'r of Soc. Sec.*, 2009 WL 3010846 at * 11 (S.D. Ohio Sept.21, 2009)). When evidence dated after a claimant's date of last insured is relevant, "the date of that evidence is a factor to be considered in assigning relative weight to that evidence." *Sweitzer v. Astrue*, 2009 WL 3064665 at * 3 (E.D. Tenn. Sept.23, 2009). *See also Higgs*, 880 F.2d at 863 (finding that evidence dated after a claimant's date of last insured evidence may be considered but a delay of two years renders that evidence "minimally probative").

Although the ALJ analyzed Claimant's mental limitations in the Step Two analysis, the Court finds no discussion of Claimant's mental health conditions, nor how they were considered by the ALJ in determining Claimant's RFC. Moreover, the Commissioner fails to direct the Court to any portion of the ALJ's decision following the Step Two analysis where the ALJ analyzed or considered Claimant's non-severe mental impairments in reaching the RFC. The Court concludes that the RFC lacks substantial evidence as there is no indication that the ALJ considered Claimant's mental limitations after the Step Two analysis. Accordingly, remand is required.

Because the Court finds that remand is required due to the ALJ's failure to explain her consideration of Claimant's mental impairments, it will not address Claimant's argument that the physical RFC was not supported by substantial evidence.

**VI. Conclusion**

Based on the foregoing, it the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: April 13, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE